UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PARITOSH DUTTA, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-1242-B |
| | § | |
| EMIRATES A/K/A EMIRATES AIRLINES, INC., | § | |
| | § | |
|   Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Emirates a/k/a/ Emirates Airlines, Inc. ("Emirates")'s Motion for Judgment on the Pleadings (Doc. 3).[1] For the reasons below, the Court **GRANTS** the motion.

### I.

### BACKGROUND[2]

This is a case about whether an airline defrauded its customer. Plaintiff Paritosh Dutta ("Dr. Dutta") is a United States passport holder with "Overseas Citizen of India" ("OCI") status. *See* Doc. 1-5, Original Pet., ¶ 8. On March 9, 2019, Dr. Dutta and his wife arrived at DFW airport, "about three hours" before their Emirates Airlines flight from Dallas to Kolkata, India. Doc. 1-5, Original Pet., ¶¶ 6–7. Dr. Dutta claims that when the couple presented their business class tickets to the Emirates agent, "the agent stated that the tickets were 'discount ticket[s]' and Dr. Dutta and his wife

---

[1] Emirates did not file a separate motion so the Court construes the Brief in Support as a Motion for Judgment on the Pleadings and refers to it as such ("Def.'s Mot."). *See* Doc. 3, Def.'s Mot.

[2] The Court draws this factual statement from the Plaintiff's Original Petition, Doc.1-5, and the parties' briefing, as noted.

[would] not [be] allowed to board the flight, without approval of a supervisor." *Id.* ¶ 8. A supervisor arrived and reviewed Dr. Dutta's "United States Passport, with the Indian Visa endorsement" ("U Visa"), the document on which he usually traveled. *See id.* ¶¶ 8–9. The supervisor informed Dr. Dutta that the U Visa would not be sufficient for his entry into India and he would have to show a different travel document, his OCI Booklet or "Blue Book" (hereinafter the "travel document"), before boarding the flight. *Id.* ¶ 8. "This . . . requirement was a first," Dr. Dutta claims, since "over the past 15–20 years . . . [he had] made this round-trip flight on multiple occasions from [Dallas] to India" and had never been required to show this travel document to do so. *Id.* ¶ 9. Dr. Dutta alleges that this travel document was demanded, on this day, as a hidden and undisclosed term of his discount business class tickets, and that Emirates imposed the hidden term as part of a scheme to "up-sale" him to more expensive tickets. *Id.* ¶¶ 9, 13.

With Dr. Dutta unable to board the flight without his travel document, the couple went home to retrieve it. *Id.* ¶ 10. Dr. Dutta claims there was time to do so. *Id.* While the Duttas were "in that process . . . an Emirates[] agent . . . telephoned Dr. Dutta . . . [and] represented to Dr. Dutta . . . that to allow Dr. Dutta and his wife to fly to India later that day, Emirates would allow him to cancel the [original flight] and purchase new[,] [later] tickets . . . for a total of $15,350.80." *Id.* The agent further represented "that Emirates would refund to Dr. Dutta[] the $9,116.26" he had paid for his original tickets. *Id.* Dr. Dutta characterizes this offer as an "up-sale[] . . . by Emirates." *Id.*

"[T]o avoid losing the $9,116.26" he had already paid, Dr. Dutta agreed to purchase the tickets on the later flight. *Id.* ¶ 10. But he claims he never received the refund he was promised.[3] *Id.*

---

[3] Emirates represents that:

Plaintiff was informed that the special discounted Business Class tickets, which the original

¶ 11. Dr. Dutta avers that the agent's representation that the $15,350.80 was the gross cost of the new tickets, instead of the net cost, was a false statement that "fraudulently induce[d] Dr. Dutta to [rebook on]the . . . [l]ater [f]light." *Id.* ¶ 16.

Ultimately, Dr. Dutta traveled to India via Chicago and Dubai on later Emirates flights March 5, 2019, through March 7, 2019, and returned to Dallas on March 19, 2019. *See* Doc. 3-1, Ramsey Decl., ¶ 10.[4] On April 22, 2021, Dr. Dutta filed his Original Petition in state court. Doc. 1, Not. Removal, 2. Emirates, which is "wholly owned by the Investment Corporation of Dubai . . . an entity wholly owned by the Government of Dubai" and is therefore "an agency or instrumentality of a foreign state," removed the action to this Court pursuant to the Foreign Sovereign Immunities Act. *Id.* at 2–3; *see* 28 U.S.C. 1441(d); 28 U.S.C. §1608(b). On June 29, 2021, Emirates filed the present motion, arguing that it was entitled to judgment as a matter of law because Dutta's claims were time-barred under the Montreal Convention and the Emirates Conditions of Carriage, or were preempted

---

> tickets to India fell under, were no longer available and Plaintiff agreed to exchange his original discounted Business Class tickets for more expensive outbound Business Class tickets. As such, Emirates applied the value of the original tickets to India towards the purchase of the more expensive new Business Class tickets and Plaintiff was solely responsible for paying the applicable fare difference of U.S. $7,282.10 per ticket.

Doc. 3, Def.'s Mot., 18 n.11 (citations omitted). However, as is appropriate at this stage, the Court accepts as true Plaintiff's allegation that he was not thus informed.

[4] Dr. Dutta objects that the Court's consideration of evidence attached to Emirates's motion would inappropriately convert the motion to one for summary judgment. *See* Doc. 6, Pl.'s Resp., 7, 13–14. The Court notes that it may properly consider documents attached to a defendant's motion to dismiss "to the extent that those documents are referred to in the . . . complaint and are central to [the plaintiff's] claim[s]" without converting the motion to one for summary judgment. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The Court finds that it may now consider the Ramsey Declaration's documentation of the Duttas' original and ultimate travel itineraries, Doc. 3-1, Ramsey Decl., ¶¶ 10(a),(l), as the details and timing of his travel and interactions with the Emirates agents facilitating the travel are both central to his claims and referred to in the Original Petition. *See* Doc. 1-5, Original Pet., ¶¶ 6, 8, 10, 13, 16. The details of Dr. Dutta's outbound flights are central to whether his claims are based on delayed travel. *See infra* III(A).The timing of his return flight is central to the issue of when carriage stopped, and therefore to when his two-year window to file suit began. *See infra* III(B).

by the Airline Deregulation Act of 1978 ("ADA"). *See* Doc. 3, Def.'s Mot., 1. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARDS

*A.     Rule 12(c)*

A party may move for judgment on the pleadings after the pleadings are closed and when doing so would not delay the trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

Generally, in analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quotations omitted). A Rule 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*,

550 U.S. at 556). However, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where a party alleges fraud, a higher pleading standard applies to some elements of the claim. *See* Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 686–87 (noting "that Rule 9(b) requires particularity when pleading 'fraud or mistake'" but that "the less rigid—though still operative—strictures of Rule 8" still apply to the fraudulent intent element of such claims). "A party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). The amount of particularity required differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). A traditional fraud claim requires pleading with particularity the "'who, what, when, where, and how' of the alleged fraud." *United States ex. rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892 (5th Cir. 2013) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

The Court's review under Rule 12(b)(6) is limited to a plaintiff's allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). If other evidence is considered, "the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)." *Id.*

B.     *The Montreal Convention*

The Montreal Convention is "a multilateral treaty . . . [that] 'governs the rights and liabilities of passengers and carriers in international air transportation.'" *Bridgeman v. United Cont'l Holdings*,

*Inc.*, 552 F. App'x 294, 296 (5th Cir. 2013) (per curiam) (quoting *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1292 (11th Cir. 2013)); *see also* Convention for the Unification of Certain Rules for International Carriage by Air, *opened for signature* May 28, 1999, T.I.A.S. 13038, 2242 U.N.T.S. 309 (hereinafter "Montreal Convention").[5] "To the extent that international airline passengers bring claims that fall within the substantive scope of the Montreal Convention, they may only do so under the Convention." *Coombes v. Sw. Airlines*, 2021 WL 3625077, at *4 (N.D. Tex. July 8, 2021) (citing *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 529 (5th Cir. 2012) (per curiam)).

Relevant to this case, Article 19 of the Montreal Convention provides liability "for damage occasioned by delay in the carriage by air of passengers," Montreal Convention, art. 19, reprinted at 1999 WL 33292734, at *34. Article 29 provides that:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . .

*Id.*, art. 29, reprinted at 1999 WL 33292734, at *38. And Article 35 limits recovery by providing that:

> The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

*Id.*, art. 35, reprinted at 1999 WL 33292734, at *39. "Bringing suit within the two-year period is a

---

[5] The Fifth Circuit has recognized that "[a]lthough the Montreal Convention completely replaced the prior Warsaw Convention, courts interpreting the Montreal Convention rely on cases interpreting similar provisions of the Warsaw Convention." *Bassam v. Am. Airlines*, 287 F. App'x 309, 313 (5th Cir. 2008) (alteration in original) (unpublished opinion); *see also Coombes v. Sw. Airlines*, 2021 WL 3625077, at *4 (N.D. Tex. July 8, 2021) (discussing Montreal Convention Articles 19, 29, and 35); *Onwuteaka v. Nw. Airlines, Inc.*, 2007 WL 1406419, at *1 (S.D. Tex. May 10, 2007) (discussing Article 19).

strict condition precedent to seeking relief under the Montreal Convention." *Coombes*, 2021 WL 3625077, at *5 (citing *Duay v. Cont'l Airlines, Inc.*, 2010 WL 5342824, at *3 (S.D. Tex. Dec. 21, 2010)).

## III.

## ANALYSIS

Emirates's motion for judgment on the pleadings presents three reasons why Dr. Dutta's claims should be dismissed with prejudice.[6] Doc. 3, Def.'s Mot., 4–9, 14–18. First, Emirates argues that Dr. Dutta's claims are based on delayed international travel between Dallas, Texas, and Kolkata, India, and are therefore governed by the Montreal Convention, which time-bars claims after two years. *Id.* at 4–7. Second, Emirates argues that Dr. Dutta's claims, if not subject to the Montreal Convention, are time-barred under Emirates's Conditions of Carriage, which include a two-year statute of limitations. *Id.* at 8–9. Third, Emirates argues that Dr. Dutta's fraud claims, if not time-barred, are preempted by the ADA. *Id.* at 14–18.

The Court considers Emirates's arguments below and finds that Dr. Dutta's claims for fraud by nondisclosure and fraud in the inducement are inseparable from one another and substantively based on injuries arising from delayed travel. Both claims are therefore time-barred under the Montreal Convention and must be dismissed with prejudice.[7]

A.   *Dr. Dutta's Injuries Are Within the Substantive Scope of the Montreal Convention*

---

[6] Emirates further argues that it was justified in denying boarding to Dr. Dutta because he lacked required travel documents, which argument the Court need not address at this time. *See* Doc. 3, Def.'s Mot., 9–14. Likewise, the Court need not address Emirates's argument that Dr. Dutta lacks standing to bring claims for the cost of his wife's original ticket. *See id.* at 2 n.1.

[7] Because the Court finds that the Montreal Convention governs Dr. Dutta's claims, it does not discuss whether the Emirates Conditions of Carriage or the ADA would bar Dr. Dutta's claims.

Dr. Dutta argues that both his claims against Emirates are based on fraud and misrepresentation, not delay, so the Montreal Convention does not apply. Doc. 6, Pl.'s Resp., 5–7. Emirates counters that "whether claims fall under the substantive scope of the Montreal Convention does not depend on how the causes of action are styled or labeled, but . . . on 'whether the claims arose from injuries within the Convention's substantive scope.'" Doc. 7, Reply, 3 (quoting *In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d 447, 456 (E.D.N.Y. 2007) (emphasis omitted). Because Dr. Dutta's economic injury arises out of Emirates's refusal to check him in for his original flight and his subsequent purchase of travel on a later flight, Emirates reasons that Dr. Dutta's claims to recover for that injury are based upon his delayed travel and exclusively governed by the Montreal Convention. *Id.* at 3–4.

As a threshold matter, the Court notes its obligation to take Dr. Dutta's well-pleaded factual allegations as true when considering a motion under Rule 12(c). *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. However, the Court finds that some of Dr. Dutta's factual allegations regarding fraud by nondisclosure are not well-pleaded.

To adequately plead his fraud by nondisclosure claim, Dr. Dutta must "state with particularity the circumstances" of how Emirates "concealed or failed to disclose the material fact that [Dr. Dutta] did not have the opportunity to discover, . . . [and] intended to induce [Dr. Dutta] to take some action by concealing or failing to disclose the material fact, and [that Dr. Dutta] suffered as a result of acting on the nondisclosure." *See Zenith Acquisition Corp. v. Nationstar Mortg., LLC*, 2010 WL 11618068, at *2, *4 (N.D. Tex. July 16, 2010) ("Plaintiff's fraud by nondisclosure claim is subject to the heightened pleading requirement of Rule 9(b)."). Dr. Dutta must also "set forth specific facts that support an inference of fraud" to adequately plead the fraudulent intent element of his claim.

*See id.*

Dr. Dutta's fraud by nondisclosure pleadings do not set forth specific facts that support an inference of fraud. *See* Doc. 1-5, Original Pet., ¶¶ 7–9. Critically, Dr. Dutta does not plead that any Emirates agent indicated any connection between the "discount tickets" and the later document demand, or that Emirates indicated that presenting the document was a condition of the "discount tickets."[8] *See id.* Dr. Dutta alleges only that the Duttas' problems "seemed to . . . start" when the agent commented on his "discount tickets." *Id.* ¶ 7. And he alleges that he believes such a condition was imposed to force him to agree to an "up-sale." *Id.* ¶¶ 10, 13. The Court cannot reasonably infer fraud from these unsupported allegations, which are "not only compatible with, but indeed [are] more likely explained by . . . lawful . . . behavior"—that the airline employees made a mistake in demanding the travel document. *See Iqbal*, 556 U.S. at 678 (discussing the allegations that the Court had found implausible in *Twombley*, 550 U.S. at 565–66, and noting that even the lower Rule 8 pleading standard requires that "the plaintiff plead[] factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged" (emphasis added)). Further, Dr. Dutta's pleadings do not state with particularity any of the circumstances regarding the original discount ticket booking, exactly what the allegedly hidden ticket condition was, or why Dr. Dutta would not have been in a position to discover the terms of his discount fare. *See id.* ¶¶ 7–9. Therefore, the Court cannot accept as true Dr. Dutta's allegation that Emirates imposed a secret

---

[7] Emirates argues that its agents properly demanded the travel document and denied boarding to Dr. Dutta because "Indian law required [him] to travel with his OCI booklet to obtain entry into India." Doc. 3, Def.'s Mot., 10. Because whether the travel document was properly or improperly demanded would not change the Court's analysis, the Court has not considered Emirates's evidence regarding the IATA Timatic and therefore need not determine whether such evidence would be properly considered under Rule 12(c). *See id.*

travel document condition to force an "up-sale." The Court does accept as true Dr. Dutta's well-pleaded allegations, as discussed below. *See* Doc. 1-5, Original Pet., ¶¶ 6–11.

Next, because the Montreal Convention by its terms applies to "any action for damages, *however founded*, whether under this Convention or in contract or in tort or otherwise," plaintiffs cannot evade the Montreal Convention's limitations through "artful pleading." Montreal Convention, art. 29, reprinted at 1999 WL 33292734, at *38 (emphasis added); *see El Al Isr. Airlines, Ltd. v. Tseng*, 525 U.S. 155, 171 (1999)) (citing *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 886 (5th Cir. 1996)). Instead, courts considering whether a claim comes under the Montreal Convention evaluate whether the claim arose from injuries within the Convention's substantive scope. *See In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d at 456; *Rosenbrock v. Deutsche Lufthansa, A.G., Inc.*, 2016 WL 2756589, at *19 & n.21 (S.D. Tex. May 9, 2016) ("The Convention's use of the phrase "however founded" emphasizes that, no matter the *alleged* basis for a claim, the Convention exclusively controls."); *see also Coombes*, 2021 WL 3625077, at *4. Therefore, the Court looks beyond the form of Dr. Dutta's claims to consider their underlying substance in determining whether the Montreal Convention applies.

### 1. The Fraud by Nondisclosure Claim Is Based on Delayed Travel

As explained above, the Court accepts as true the following well-pleaded factual allegations related to Dr. Dutta's original flight—Dr. Dutta arrived at the airline counter three hours before his scheduled flight, his "discount tickets" were commented upon, he was refused boarding because he lacked the travel document Emirates demanded, he returned home to retrieve the document and would have had time to do so, and he accepted rebooking on a later Emirates flight at a higher price after Emirates called to offer the later flight. *See* Doc. 1-5, Original Pet., ¶¶ 6–11. If Dr. Dutta's claim

for damages based upon this set of facts and circumstances—though styled as fraud by nondisclosure—"ar[ises] from injuries within the [Montreal] Convention's substantive scope," then the Convention's provisions, including the two-year time limit, apply. *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d at 456; *see Rosenbrock*, 2016 WL 2756589, at *19 & n.21.

Courts have drawn a distinction between claims where a passenger's original travel plans are interrupted and the airline eventually provides a substitute flight, which sound in delay, and claims in which an airline never provides a substitute flight, which are based on "complete non-performance." *See, e.g., Tewes v. Gulf Air*, 2011 WL 649532, at *2 (S.D. Tex. Feb. 10, 2011) (discussing breach-of-contract claims); *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d at 456 (collecting cases). The former kind of claims are preempted by the Montreal Convention, while the latter are not. *See In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d at 454. Courts have not always consistently drawn the line between delay and non-performance. *Compare Pogadaev v. Aeroflot-Russian Airlines*, 2017 WL 3267525, at *3 (N.D. Cal. July 31, 2017), *with Irabor v. Lufthansa Airlines*, 427 F. Supp. 3d 222, 232–33 (D. Mass. 2019). But some have declined to allow plaintiffs to unilaterally convert a claim for delay to one for non-performance by quickly rebooking. *See In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d at 453–54.

Notably, faced with facts analogous to those presented here, several courts have found that the kind of injury Dr. Dutta suffered sounds in delay and is subject to the Montreal Convention's provisions. The Court finds persuasive the cases of *Ikekpeazu v. Air Fr.*, 2004 WL 2810063, at *2 (D. Conn. Dec. 6, 2004); *Pogadaev*, 2017 WL 3267525, at *3; and *Lee v. AMR Corp.*, 2015 WL 3797330, at *3–4 (E.D. Pa. June 18, 2015). In each of these cases, passengers in international air travel were denied boarding by airline officials because of alleged problems with their travel documents. *See*

*Ikekpeazu*, 2004 WL 2810063, at *2; *Pogadaev*, 2017 WL 3267525, at *3; *Lee*, 2015 WL 3797330, at *3–4. In each case, the passengers rebooked on later flights, incurring extra expense. *See Ikekpeazu*, 2004 WL 2810063, at *2; *Pogadaev*, 2017 WL 3267525, at *3; *Lee*, 2015 WL 3797330, at *3–4. And in each case, the courts found that the Montreal Convention was the appropriate and exclusive vehicle governing their claims to recoup the costs incurred. *See Ikekpeazu*, 2004 WL 2810063, at *2; *Pogadaev*, 2017 WL 3267525, at *3; *Lee*, 2015 WL 3797330, at *3–4.

For example, in *Pogadaev*, a passenger attempting to board her flight home from Russia to America "was denied boarding on grounds that her passport was set to expire in fewer than 90 days, and therefore was not valid for travel." 2017 WL 3267525, at *1. Her husband, who "was not expressly denied boarding, . . . understandably elected to stay behind with his wife." *Id.* The couple "then obtained tickets for transport on Air France . . . but in doing so incurred . . . approximately $12,400 in damages . . . as a direct result of [the wife] having been denied boarding." *Id.* The allegedly problematic passport "did not preclude [the wife] from traveling on the Air France flight." *Id.* The court found that Article 19 of the Montreal Convention (and the defenses thereto set out in Article 20) applied to the couple's claims but that "Aeroflot [was] not liable for [the wife's] alleged delay . . . because it resulted from her own failure to present a travel document that complied with [applicable] requirements." *Id.* at *3.

Courts have reached the same result even if the airline incorrectly believed that a passenger's travel document was faulty when it denied boarding. *See Ikekpeazu*, 2004 WL 2810063, at *2; *Lee*, 2015 WL 3797330, at *3–4. In *Ikekpeazu*, for example, an Air France agent confiscated the passport of a passenger who was attempting to check in for his flight from Nigeria to the United States. 2004 WL 2810063, at *1. After over an hour, the agent returned the passport but stated that there was

a "security problem," refused to let the passenger board, and directed the passenger to the American Embassy to resolve the issue. *Id.* The passenger traveled to the American Embassy, eight hours away, at which point "he was informed that there was no problem with his passport." *Id.* "He returned to the airport, boarded an Air France flight without difficulty, and arrived at his destination" several days after his originally intended arrival date. *Id.* Noting that the plaintiff's state-law negligence, breach-of-contract, and negligent infliction of emotional distress claims were preempted, the court found that his "allegations of financial injury resulting from the delay in his return [to work in the United States] provide[d] a basis for a claim under [Article 19]." *Id.* at *2.

And likewise, in *Lee*, a "[p]laintiff sought to obtain a boarding pass at the airport for her flight from Miami to Belize." 2015 WL 3797330, at *4. At the ticket counter, an airline agent "denied her a boarding pass due to a belief—mistaken or not—that [the] [p]laintiff did not have the required visa" to enter Belize. *Id.* "A second agent likewise denied her a boarding pass on the same grounds." *Id.* Unable to board, the plaintiff "changed the destination of her flight to Guatemala, which was the next destination of her trip," and "sued for damages occasioned as a result of the delay." *Id.* Based on these allegations, the court found "that her claims [were] governed by Article 19 of the Montreal Convention." *Id.*

While some courts have found that Article 19 does not apply when the plaintiff is denied boarding and rebooks travel on a different airline, that is not the case here. *See Irabor*, 427 F. Supp. at 232–33 (noting that the plaintiff's injuries were not based on a delay, because the airline never "offered . . . alternate travel arrangements or an opportunity to cure any defects with his travel documents" and the plaintiff rebooked travel on a different airline after the first airline sent him away); *In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d at 454. *But see Pogadaev*, 2017 WL

3267525, at *1, *3 (finding that Article 19 applied even though the plaintiff rebooked on a different airline). Dr. Dutta traveled later the same day on Emirates, at Emirates's suggestion, like plaintiffs in other cases where courts have found "delay." *C.f. Ikekpeazu*, 2004 WL 2810063, at *2; *Lee*, 2015 WL 3797330, at *3–4.

In sum, the circumstances and resulting injury on which Dr. Dutta's first fraud claim is founded are—in substance, if not in form—like those presented in *Pogadaev*, *Ikekpeazu*, and *Lee*. The Court therefore finds that Dr. Dutta's claim for fraud by nondisclosure, based on the denial of boarding and resulting rebooking on a later Emirates flight is encompassed by Article 19 of the Montreal Convention.

### 2. The Fraudulent Inducement Claim Is Also Substantively Based on Delay

Dr. Dutta' second claim is for fraud in the inducement. Doc. 1-5, Original Pet., ¶¶ 15–17. He alleges that, as he was en-route to retrieve his travel document, an Emirates agent "telephoned . . . from Emirates offices in Dubai" and "represented to Dr. Dutta[] that to allow Dr. Dutta and his wife to fly to India later that day, Emirates would allow him to cancel the [original flight] and purchase new tickets, at a cost of $14,564.20 plus $786.60 for a connector flight, for a total of $15,350.80." *Id.* ¶ 10. And "if Dr. Dutta agreed to do this and paid the $15,350.80 . . . Emirates would refund . . . the $9,116.26" Dr. Dutta had paid for the original flight. *Id.* Dr. Dutta states that he relied on this representation of the net cost/future refund and paid for the new tickets, and that he never received the promised refund. *Id.* He alleges that Emirates knew the refund representation was false when made and made the false refund promise to induce Dr. Dutta to agree to the "up-sale" to more expensive tickets. *Id.* ¶ 16. Emirates repeats its assertion that Dr. Dutta's fraud claims, together, are based on delayed travel.

Under the circumstances alleged, the Court agrees with Emirates that the Montreal Convention applies to his fraud in the inducement claim. Again, the Montreal Convention requires the Court to look to the substance—not the form— of Dr. Dutta's claims. *See In re Nigeria Charter Flights Cont. Litig*, 520 F. Supp. 2d at 456; *Rosenbrock*, 2016 WL 2756589, at \*19 & n.21; *Coombes*, 2021 WL 3625077, at \*4. In substance, Dr. Dutta has pleaded a fraud in the inducement claim that is inextricably intertwined with his fraud by nondisclosure claim because both acts were necessary parts of one alleged scheme to defraud him out of his original tickets and into an "up-sale." *See* Doc. 1-5, Original Pet., ¶ 10 (stating that Emirates told Dr. Dutta that "to allow Dr. Dutta . . . to fly to India later that day, Emirates would allow him to . . . purchase new tickets" and that "to avoid losing the $9,116.26" he had paid for the original flight "Dr. Dutta had little choice but to rely upon the . . . [a]gent's representations"). But for the denied boarding incident discussed above, Dr. Dutta would not have had any reason to agree to the allegedly fraudulent "up-sale." *See id.* The delay was the mechanism by which Emirates allegedly created the opportunity for its agent to present the "up-sale" and false refund representation.

Moreover, Dr. Dutta avers that he had time to go home and retrieve his travel document before his original flight. *Id.* Taking this as true, the Court must assume that when the Emirates representative called Dr. Dutta to make the allegedly fraudulent representation about the new ticket price and refund, no delay had yet occurred. But for the phone call and allegedly fraudulent representation, one assumes Dr. Dutta would have hurried back to catch the original flight. *See id.* So, the immediate effect of the call and alleged misrepresentation was to *cause* the delay, if it had not already been created by the denial of boarding. Further, the source of Dr. Dutta's claimed damages is the alleged failure to refund the flight from which Dr. Dutta was denied boarding. *C.f. Pogadaev*,

2017 WL 3267525, at *3 (finding the Montreal Convention applied where a passenger's injury was costs incurred replacing the flight the passenger was not permitted to board); *Tewes*, 2011 WL 649532, at *2 (finding the Montreal Convention did not apply where the claimed injury was that an airline later refused to allow passengers who were bumped from business class to economy class on their original flight to use the business class tickets for later travel).

Thus, this second fraud claim is also—in substance if not in form—a claim for injuries arising from delayed travel, and is therefore within the scope of the Montreal Convention.

B.   *Dr. Dutta's Claims Are Time-Barred Under Article 35 of the Montreal Convention*

Under Article 35 of the Montreal Convention, any claim under the Convention must be filed within two years of "the date of arrival at the destination . . . the date on which the aircraft ought to have arrived, or . . . the date on which the carriage stopped," whichever is later. *See* Montreal Convention, reprinted at 1999 WL 33292734, at *39.

Emirates argues that "[Dr. Dutta's] delay occurred on March 5, 2019, and [he] did not bring an action against Emirates until April 22, 2021—two years, one (1) month and seventeen (17) days after the alleged [i]ncident." Doc. 7, Def.'s Reply, 5. Dr. Dutta does not deny that he traveled on or filed suit on these dates. *See* Doc. 6, Pl.'s Resp., ¶¶ 6, 13.

As noted above, without converting this motion to one for summary judgment, the Court may properly consider the evidence of Dr. Dutta's original and ultimate itinerary that Emirates has attached to its motion, since Dutta's flight plans are central to his claims and referred to in his Original Petition. *See* Doc. 3-1, Ramsey Decl., ¶¶ 10(a),(l). The ultimate itinerary reflected here shows that the Duttas' replacement flight to Kolkata occurred on March 7, 2019. *Id.* ¶ 10(l). The itinerary shows that the Duttas traveled home on March 19, 2019. *Id.* Assuming without deciding

that the Duttas' "carriage" on Emirates did not "stop" until his return flight arrived on March 19—or perhaps even a day later due to time change—this action was commenced more than two years after that date. *C.f. Lecka v. United Cont'l Holdings, Inc.*, 2014 WL 12670644, at *3 (S.D. Tex. June 3, 2014) ("Due to the change in time zones, it is unclear whether the action accrued on January 9, 2012, or January 10, 2012. However, Plaintiffs did not commence this action until January 13, 2014. This filing date is longer than the two years from the latest possible accrual date allowed under Article 35 of the Montreal Convention." (footnote omitted)).

Accordingly, because Dr. Dutta did not file his claims within the required time, the Court finds they should be and are **DISMISSED WITH PREJUDICE**.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Emirates's Motion for Judgment on the Pleadings. Dr. Dutta's claims are hereby **DISMISSED WITH PREJUDICE**. This is a final judgment in this action.

**SO ORDERED**.

**SIGNED: January 6, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE